UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EPHRAIM WEISSMANDL, RIVKA
WEISSMANDL AND CHAMPION DC,
INC.,

                            **COMPLAINT**

                 Plaintiffs,         **Docket No. _____**

        -against-           **Jury Trial Demanded**

THE COUNTY OF ROCKLAND, THE COUNTY
OF ROCKLAND HEALTH DEPARTMENT,
EDWIN J. DAY, as Rockland County Executive,
PATRICIA S. RUPPERT, DO, MHP, CEP, DAMFM,
FAA, as Commissioner, JOHN G. STOUGHTON,
as Senior Public Health Sanitarian and "JOHN DOES
AND JANE DOES 1-10",

                      Defendants.
----------------------------------------------------------X

      Plaintiffs Ephraim Weissmandl, Rivka Weissmandl and Champion DC, Inc., by their

Attorney, Dennis E. A. Lynch, Esq. of Feerick Lynch MacCartney & Nugent, PLLC, as and for

their Complaint against the above-captioned Defendants the County of Rockland, the County of

Rockland Health Department, Edwin J. Day, as Rockland County Executive, Patricia S. Ruppert,

DO, MHP, CEP, DAMFM, FAA, as Commissioner, John G. Stoughton, as Senior Public Health

Sanitarian and "John Does and Jane Does 1-10" (collectively "Defendants") allege upon

information and belief as follows:

### SUMMARY AND NATURE OF ACTION

      1.     This action is brought by Plaintiffs to obtain redress for wrongs from past and

ongoing Civil Rights Violations involving the infringement of Plaintiffs' religious freedom,

liberty and property rights by Defendants regarding Plaintiffs operating their business that

accommodates religious Jewish Families as well as and other civil rights violations.  Defendants without any fundamental fairness on May 18, 2018 damaged operation of Plaintiffs' business that accommodates religious families and the Individual Plaintiffs liberty and property rights. Defendants also singled Plaintiffs out based upon application of an unconstitutionally vague regulation, selectively prosecuted Health Code violations and thrust Plaintiffs into a customized revolving door of fundamentally unfair Hearing procedures.

2.      Since efforts to exercise their civil rights began, Plaintiffs have been subjected to unequal as well as outrageously arbitrary and capricious conduct by Defendants who have abused their authority and allowed unlawful prejudices to govern municipal affairs.

3.      These Civil Rights violations have continued to have the purpose and effect of directly depriving and impairing Plaintiffs' enjoyment of constitutional and statutory rights.

4.      Defendants' conduct is and should be declared unlawful, and should be permanently enjoined and remedied by an appropriate award of monetary damages, and Defendants and all those acting in concert with them should be enjoined from performing any and all acts in furtherance of depriving Plaintiffs of their rights under law.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and § 1343(a).

6.      This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1983, and 1988.

7.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 as well as other pendant New York State Claims.

2

8.      Venue is proper under 28 U.S.C. § 1391(b) in that Defendants reside and the claims alleged herein arise in this Judicial District.

## PARTIES

9.      At all times relevant Plaintiffs Ephraim Weissmandl and Rivka Weissmandl ("Weissmandl Plaintiffs") are husband and wife who practice their faith as religious Jewish people owning and operating Summer Camps within the County of Rockland, State of New York (the "Summer Camps") and also have Summer Campers from New Jersey as well as New York.

10.     At all times relevant Plaintiff Champion DC, Inc. ("Champion") is a New York State Domestic Corporation that the Weissmandl Plaintiffs are shareholders of having an Office for the conduct of business at 175 West Clarkstown Road, New City, New York 10956.

11.     The Summer Camps are intended to accommodate the needs of religious Jewish Families who desire a summer experience for their children that is still steeped in the Torah traditions.

12.     During the Summer Camps, Rabbis daily provide Torah studies at the Summer Camp.

13.     Unlike some other Summer Camps, the boys in Plaintiffs' Summer Camps can be seen wearing symbols of their Jewish Faith to all outside observers.

14.     The Summer Camps have "separate campsites for boys/pre- school and girls" that "caters to the yeshiva" children "looking for the ultimate camping experience" "where Torah and fun unite" in a "program that provides warmth, fun and ruach in a true Torah atmosphere".

15.     At all times relevant Defendant County of Rockland ("Defendant County") is a Municipal Corporation organized under the laws of the State of New York having jurisdiction

over all municipal matters within the territorial boundaries of Rockland County, including the enforcement of applicable rules, regulations and codes.

16.     At all times relevant Defendant County of Rockland Health Department ("Defendant Health Department") is a Department within the County having responsibility for the enforcement of the New York State Sanitary Codes and other public health related regulations with regard to those matters lawfully delegated to the Department of Health.

17.     At all times relevant Defendant, Edwin J. Day ("Defendant Day") is and was the duly elected County Executive for the County of Rockland, New York and resides in the County of Rockland, State of New York.

18.     At all times relevant Defendant Patricia Ruppert, DO, MHP, CEP, DAMFM, FAA ("Defendant Commissioner") has been duly employed as a Commissioner for the Department of Health in the County and has an Office for the conduct of business in the County of Rockland.

19.     At all times relevant Defendant John Stoughton is the Senior Public Health Sanitarian ("Defendant Stoughton") for the Health Department in the County and has an Office for the conduct of business in the County of Rockland.

20.     At all times relevant Defendants "John Does and Jane Does 1-5" are intended to be persons whose names and/or actions are presently unknown and who conspired with the named Defendants regarding the actions set forth in this Complaint.

## STATEMENT OF FACTS

### A. Background of Weissmandl Plaintiffs

21.     Within the County of Rockland there is an expanding population of Orthodox Jewish and Hasidic Jewish families.   The growth of those Orthodox and Hasidic families ("Religious Community") have caused considerable political controversy where the Defendant County Executive and his Administration have signaled clear opposition to this expanding Religious Community within the County.

22.     The Defendant Day as County Executive directs the activities and approaches of the Defendant Health Department and ultimately all employees of the Defendant Health Department.

23.     In that capacity, Defendant Day and members of his Administration have admitted a goal and implemented a policy and practice to limit and suppress the growth of the Religious Community in Rockland County.

24.     The Religious Community has greatly expanded its population in the Town of Ramapo, County of Rockland, New York in comparison to all Towns in the County of Rockland.

25.     In furtherance of Defendants' aforementioned goal, policy and practice, Defendant Day personally admitted to a former Rockland County Department Head who directed the grant of federal monies within the County regarding providing said funding to the Town of Ramapo that said Department Head should be careful not to give too much money in the Town of Ramapo as that would allow for the Religious Community to "continue growing."

26.     Additionally, the current Deputy County Executive also previously advised this same Department Head about the Religious Community of which the Weissmandl Plaintiffs are an important part of, "We can't stop them, but we can and must try to slow their growth down."

27.     The Weissmandl Family has been well known throughout Rockland County as well as in this Religious Community.

28.     Ephraim Weissmandl and Rikva Weissmandl as members of this Religious Community were married on November 23, 1994 and have ten beautiful children, Sharona, Ahuva, Hinda, Sara, Moshe, Miriam, Eliezer, Mordechai, Yehuda and Yisroel.

29.     The Weissmandl Plaintiffs as members of this Religious Community welcome children and equally enjoy providing summer camp services for all children.

30.     The Weissmandl Plaintiffs are proud Religious Jewish individuals who are faithful to the requirements of Judaism as part of this Religious Community, exercise their sincerely held religious belief in the course and scope of their Summer Camp business and incorporate the exercise of such sincerely held religious beliefs in their Summer Camp operations.

31.     The Weissmandl Plaintiffs are also a husband and wife team devoted to the conduct of Summer Camp services that have been provided safely and securely for approximately two decades in the State of New Jersey and later in the State of New York.

32.     The population of children in those Summer Camps has been primarily from this Religious Community who also exercise their sincerely held religious beliefs during camp hours and their Families state that they selected Plaintiffs' Summer Camps for that purpose.

33.     The Weissmandl Plaintiffs started and then grew a profitable Summer Camp business for youth beginning in the Summer of 1998.

34.     Although the Weissmandl Plaintiffs' initial Summer Camps were located in New Jersey, said Plaintiffs' clientele were also from Rockland County in New York State where the Weissmandl Plaintiffs resided at all relevant times.

35.     The Weissmandl Plaintiffs relocated their Summer Camp business from New Jersey to Rockland County, New York in the summer of 2003.

36.     In this relocation from New Jersey to New York, the Weissmandl Plaintiffs still enjoyed a favorable reputation by Families for operating Summer Camps in the State of New Jersey with the health, safety and welfare of all children in said Summer Camps paramount to said Plaintiffs at all times.

37.     The Weissmandl Plaintiffs wanted to relocate their Summer Camps to Rockland County, New York from New Jersey to be closer to their home and better serve their Summer Camp clients from the Town of Ramapo in the County of Rockland.

38.     Moving from New Jersey closer to their Summer Camp Clients after enjoying a well deserved half-decade reputation for safely operating Summer Camps, the Weissmandl Plaintiffs opened two Summer Camps in Rockland County beginning 2003.

39.     The Defendants were aware that Plaintiffs engaged in interstate commerce activities as with the 2018 Summer Camp the Plaintiffs will derive over $100,000 in income from Summer Campers residing in New Jersey who will travel to New York.

40.     Notwithstanding Defendants being aware of interstate activities of Plaintiffs, Defendants by application of selective enforcement of regulations and without providing

adequate notice of the intention to apply said regulations have continued to delay, disrupt and otherwise substantially interfere with that interstate commerce as well as other activities of the Plaintiffs in operating a Summer Camp.

41.     In Rockland County, the Weissmandl Plaintiffs had these two separate Summer Camps at different locations, one for boys and one for girls which were at that time operated under a corporation known as Merockdim, Inc. ("Merockdim"). Between the years 2003 and 2016, Merockdim boys camp was at 656 Route 306 (the "Tartikov Property") and the Merockdim girls camp was at Yeshiva of Spring Valley at 142 Grandview Avenue.  Both such camps were located in New York State.

42     Operation of a Summer Camp for the boys beginning the year 2003 on the Tartikov Property involved considerable controversy for the Weissmandl Plaintiffs which controversy  was religious in nature.

43.     The Tartikov Property in the Town of Ramapo, New York was the subject of a bitter religious land use dispute between those in the Religious Community who wished to develop the property for religious purposes and the Village of Pomona, New York government and others which were resisting those efforts.

44.     Eventually, the Tartikov litigation resulted in the United States District Court for the Southern District of New York determining that the Village of Pomona and others discriminated against those in the Religious Community who desired to build an educational center on the same property where the Weissmandl Plaintiffs operated their Boy's Summer Camp from 2003 to 2016. (Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, New York, 280 F.Supp 3d 426 (2017)).

45.     The Weissmandl Plaintiffs when operating their Summer Camps on Tartikov Property experienced discriminatory conduct by the Defendants and those acting on behalf of the Defendants.

46.     For example, employees of the Defendant Health Department applied vague rules and regulations in a discriminatory manner where (a) reasonable Sumer Camp Directors would not be reasonably expected to have notice as to whether such rules and regulations were violated or not and/or (b) the rules and regulations did not provide explicit standards for those who apply said rules thereby authorizing arbitrary application and enforcement.

47.     As a result, unless Defendant Health Department Employees were arbitrarily satisfied with the Weissmandl Plaintiffs responses, potential problems such as Health Code violations and even threats of "being shut down" would result.

48.     Thus, with such unbridled discretion by said Health Department Employees to issue violations and even shut down said Plaintiffs' Summer Camp, for any reason or no reason, the Weissmandl Plaintiffs were forced to suffer discrimination without remedy.

49.     As an example, during the Summer of 2011, a Health Department Employee named "Andy" came to do a Summer Camp inspection.

50.     During official business for the Defendant Health Department at the Summer Camp, said "Andy" sexually harassed Plaintiff Rivka Weissmandl by stating that "if only she was younger and not married." "Andy" then proceeded to ask said Plaintiff how she maintained "such a good body after so many kids" and asked her "to spin around for him."

51.     Plaintiff Rivka Weissmandl was forced to comply with and suffer such discriminatory conduct and demands or risk violations being issued or even the Summer Camp

9

being "shut down" due to the unbridled discretionary powers of Health Department Employees over Summer Camp activities.

52.     "Andy" later requested that Dina give him her personal phone number and said Plaintiff understood that he tried contacting her at one point.

53.     This was not an isolated action by one Health Department employee since "Andy" confirmed to said Plaintiffs that his superiors at the Health Department affirmatively condoned his conduct by stating that Defendant Stoughton told him that all male Health Department inspectors wanted "to do the Weissmandl Summer Camp inspection" because "Dina" (Rivka) was there and "she was pretty."

54.     At that time and all other times the Weissmandl Plaintiffs opposed such abusive and discriminatory actions, but said Plaintiffs were advised not to file any complaints because of the certain backlash Plaintiffs' would sustain from Defendants who "were so powerful" literally over the life or death of said Plaintiffs' Summer Camp livelihood and business.

55.     As a result of such egregious discriminatory conduct, Plaintiff Rivka Weissmandl suffered severe distress and emotional trauma from such discriminatory conduct.

**B. The Summer Camps**

56.     From the start of Summer Camp operations in Rockland in 2003 under prior Rockland County Executive Administrations, the Weissmandl Plaintiffs were well considered by many in the Defendant Health Department.

57.     In confirmation of the Weissmandl Plaintiffs' safe and sound operations of their Summer Camps and satisfactory past inspections, up to start of the Defendant Day

Administration Plaintiff Rivka Weissmandl was given approval to do Summer Camp self-preoperational inspections.

58.     Up until the start of the Defendant Day Administration, the Weissmandl Plaintiffs for almost two decades had thousands of children come through their Summer Camps and enjoyed safe, healthy and enjoyable Summers without any harm to the children and without concern about their Summer Camp operations being arbitrarily "shut down."

59.     Notwithstanding that good reputation of the Weissmandl Plaintiffs when previously operating Summer Camps, the beginning of the 2014 Summer Camp brought about more blatant discriminatory conduct.

60.     For example, at the beginning of the 2014 Summer Camp Defendant Stoughton advised that he was sent to the Summer Camp Tartikov Site of the Weissmandl Plaintiffs by the Mayor of the Village of Pomona, New York to conduct a special investigation.

61.     Defendant Stoughton indicated that the Mayor of the Village of Pomona wanted said Defendant to inspect the Tartikov Summer Camp Site.

62.     While the Mayor of Pomona should not have been able to direct the actions of Defendant Stoughton, he did and only after allowing this inspection were the Weissmandl Plaintiffs allowed to open the 2014 Summer Camp Season.

63.     Additionally, it became clear to the Weissmandl Plaintiffs that the Defendants were coordinating with other entities to present obstacles to the opening of the 2014 Summer Camp Season.

64.     Although the Weissmandl Plaintiffs had operated at the Tartikov property since 2003, suddenly in early Summer of 2014 the Weissmandl Plaintiffs understood that the

Defendants arranged for Orange and Rockland Utilities to inspect the Tartikov Summer Camp Site to demand substantial upgrades in the electrical service to the Summer Camp.

65.     As a result of that sudden and unusual demand to upgrade electrical services that for approximately a decade were acceptable, the Weissmandl Plaintiffs were required to expend approximately $30,000 to comply with the requests of Orange and Rockland Utilities at the site. This sudden payment had a substantial impact on the financial operations of the Summer Camps.

66.     Nevertheless, it became increasingly clear that Defendants were in coordination with others to assert considerable economic and other pressure upon the Weissmandl Plaintiffs to shut down in the operation of their Summer Camps with the County of Rockland, New York.

67.     This increasingly discriminatory conduct by Defendants was notwithstanding the satisfactory performance by the Weissmandl Plaintiffs in the prior years of operating Summer Camps.

68.     Despite the Weissmandl Plaintiffs agreeing to such unreasonable conditions, Defendant Stoughton before the start of the 2015 Summer Camp indicated that the Building Inspector for the Village of Pomona must inspect the Tartikov Camp Site before the Weissmandl Plaintiffs could open the Camp for the 2015 Season.

69.     Plaintiff Ephraim Weissmandl advised said Defendant that the Village had no right to conduct any such inspection and that the Village was involved in an extremely litigious battle with the owners of the Tartikov property which litigation should not adversely impact operations of the Weissmandl Plaintiffs' Summer Camp on that Tartikov property.

70.     In response Defendant Stoughton screamed at Plaintiff Ephraim Weissmandl and demanded that if the Weissmandl Plaintiffs did not allow an inspection of their Summer Camp at

12

the Tartikov property by the Village of Pomona, said Defendant Stoughton "would shut down the (Summer) camp."

71.     The Weissmandl Plaintiffs therefore under duress allowed an inspection by the Village of Pomona Building Inspector, but that inspection produced no evidence of any Code violations on the Tartikov Property by the Summer Camp.

72.     Needless to say Defendant Stoughton was annoyed and his revenge would be soon shifted against the Weissmandl Plaintiffs.

73.     Immediately thereafter, Defendant Stoughton compelled the Weissmandl Plaintiffs to hire a Licensed New York State Building Inspector to inspect the Summer Camp property and buildings.  The Weissmandl Plaintiffs hired such a professional with many years of experience.

74.     After the Camp passed inspection by this Licensed Building Inspector hired by the Weissmandl Plaintiffs, Defendant Stoughton was so infuriated that he filed a complaint with the New York State authorities seeking unsuccessfully to revoke that Professional's license.

75.     This action was done by Defendant Stoughton in retaliation for the Weissmandl Plaintiffs obtaining a satisfactory inspection by that Professional Building Inspector.

76.     As the re-election campaign by Defendant Day for a second term as County Executive continued, increasingly coordinated pressure was placed upon the Weissmandl Plaintiffs concerning operation of their Summer Camps.

**C.  The Alleged Violations in the 2015 Summer Camp**

77.     As usual every year at the close of each Summer Camp, the Weissmandl Plaintiffs contacted the local public water company, United Water, that provided drinking water to the Summer Camp and would order that the water services be turned off.

78.     United Water provided no confirmation in writing or otherwise as to a "turn off order", but simply indicated verbally that this shut down would be accomplished.

79.     The Weissmandl Plaintiffs so closed the 2014 Summer Camp and then prepared the following Summer of 2015 to open that Summer Camp.

80.     The opening and closing of water servicing the Summer Camp by United Water was done simply at all times by having a valve either turned on or turned off that was located right next to the street outside the Summer Camp.

81.     The usual bill for United Water services each Summer Camp averaged $350.

82.     Consistent with all prior practices, the Weissmandl Plaintiffs contacted United Water prior to the start of the 2015 Summer Camp to have the water turned on.  This was done as usual just before the pre-inspection of the Summer Camp by the Health Department.

83.     When the pre-inspection took place by the Health Department at the beginning of the 2015 Summer Camp, however, the water servicing the Camp was claimed to have failed requirements by the Health Department.

84.     Unknown to the Weissmandl Plaintiffs, despite being requested to do so United Water never shut off the water to the Camp at the end of the 2014 Summer Camp and a leak existed causing ten times the amount of water to flow when the Camp was not open resulting in a water bill of $3,500.

85.     Defendant Stoughton at the start of the 2015 Summer Camp confronted Plaintiff Ephraim Weissmandl about this unpaid bill and falsely alleged that the Weissmandl Plaintiffs were trying to "not pay" a bill that was due and owing to United Water.

86.     When the Weissmandl Plaintiffs advised that the water issue was not their fault, Defendant Stoughton referencing the Defendant Day Administration advised that "my boss is up my ass" about the Weissmandl Plaintiffs' Summer Camp and he was therefore "going to shut down" the 2015 Summer Camp.

87.     The Weissmandl Plaintiffs following guidance from Defendant Stoughton immediately launched tremendous efforts to obtain bottled water and undertook all activities they believed were then required for the 2015 Summer Camp to open.

88.     Notwithstanding those extraordinary efforts, the Defendant Health Department conducted its inspection a few days later on June 30, 2015 and cited the Camp for multiple purported violations that primarily dealt with the issue of the supposed lack of an adequate water supply.

89.     In fact, however the water supply from United Water was connected fully to the Summer Camp as of July 1, 2015 at 4:00 p.m. after being opened on June 30, 2015.

90.     Notwithstanding the foregoing, Defendant Health Department issued violations of approximately $10,000 for the Camp not having approved United Water services for just over one (1) day of Summer Camp activity.

91.     As more fully set forth herein, eventually a purported Hearing was conducted and a total penalty of $15,500 was recommended to be imposed against the 2015 Summer Camp operator.

92.     When the Weissmandl Plaintiffs appealed that civil penalty against the 2015 Summer Camp Operator, Merockdim, Inc., Defendant Commissioner eventually raised the penalty to $23,250.

**D.  The Defendant Commissioner's Hearings – the County Kangaroo Court**

93.     From this 2015 Summer Camp Season, as previously noted Defendants issued numerous violations against the Summer Camp Operator, Merockdim, Inc.

94.     This process of conducting Hearings with regard to these Department of Health violations is a proverbial kangaroo court that is flawed and fundamentally unfair to anyone accused of a Health Department violation.

95.     In these Hearings, the Defendant Commissioner *ex parte* appoints and communicates with a Hearing Officer who then hears complaints filed by the Defendant Commissioner's employees in the Defendant Health Department.

96.     The Commissioner, the Hearing Officer and Defendant Health Department employees are all paid by the same Defendant County.

97.     The scheduling of these Administrative Hearings is done pursuant to *ex parte* communications between Defendant Commissioner and the designated Hearing Officer.

98.     The said Defendants allow *ex parte* communications between the Hearing Officer and Defendant Health Department Staff who prosecute these cases before the commencement of any Hearings.

99.     Additionally, the Defendants' policy permits a Subpoena to be issued and the practice of Defendants is to allow *ex parte* communications between Rockland County Health

Employees and the Hearing Officer regarding issuance of any Subpoena, but not on notice to the party against whom violations are brought.

100.    Additionally, Subpoenas that are submitted by Defendant Health Department prosecuting staff are signed with approval by the Hearing Officer without notice to the party being prosecuted.

101.    Furthermore, any recommendations by the Hearing Officer are brought before the Defendant Commissioner for determination who acts as a proverbial "rubber stamp" for the Hearing Officer except for increasing the penalty recommended if any party such as the Weissmandl Plaintiffs appeals the Hearing Officer's recommendation for a determination by the Defendant Commissioner.

102.    As such, said Defendants' Hearing process as applied by Defendants is a proverbial kangaroo court without adequate due process as well as with fundamentally flawed and unfair procedures as well as results.

103.    This was the experience of the Weissmandl Plaintiffs after being issues the 2015 violations.

**E.  Summer Camp 2017**

104.    Before opening Summer Camp 2017, the Weissmandl Plaintiffs moved to a new location to be away from the religious controversy and issues presented at the Tartikov property.

105.    In 2017 the Tartikov Federal Court litigation was still very active, very public and very vituperative regarding comments made about the Religious Community.

106.    Therefore, the Weissmandl Plaintiffs moved to a new location and also established a new corporation for that new location, the Plaintiff Champion DC, Inc.

107.    Before the Weissmandl Plaintiffs opened the 2017 Summer Camp at the new location, Defendant Stoughton told said Plaintiffs that they could not open another Summer Camp and would be "shut down" without paying the fines from the 2015 violations even though the prior fines were imposed against a different corporation than Plaintiff Champion.

108.    Therefore, the Weissmandl Plaintiffs were coerced to make a payment plan with an initial payment of $7,000 before 2017 Summer Camp could start to avoid being "shut down."

109.    This requirement by Defendants to compel payment of a prior civil penalty for a different corporation than Plaintiff Campion for issuance of a new permit for the 2017 Summer Camp was manifestly illegal and without any authority.

110.    For the 2017 Summer Camp, the Weissmandl Plaintiffs passed all opening and midsummer inspections.

111.    Nevertheless at the end of the Summer 2017 Camp on August 10, 2017 (a week before Camp was over), Defendant Stoughton claimed to be randomly doing inspections and while passing near the Weissmandl Plaintiffs' Camp claimed he saw a group of children with religious garb at the Summer Camp playing with their Counselors on the front lawn in the Camp.

112.    Defendant Stoughton had never conducted any such random inspections in the approximate decade and a half that the Weissmandl Plaintiffs operated Summer Camps in Rockland County.

113.    Nevertheless, Defendant Stoughton without consent entered the Summer Camp and inspected the activity.

114.    For these activities the children were playing a hopscotch type of game and were fully monitored by three staff members when only two staff members were needed by the applicable Code.

115.    Notwithstanding the same, the Plaintiff Champion was issued a violation for that activity despite no Code violations.

116.    Without consent or the issuance of any search warrant, Defendant Stoughton then came further into a Summer Camp building manifestly on a mission to find more violations.

117.    Defendant Stoughton started questioning Campers in the hallway about the whereabouts of their Counselors.

118.    That mission not surprisingly resulted in Defendant Stoughton claiming violations existed against the Plaintiff Champion when in reality no violations existed.

119.    For example, pursuant to the Rockland County Code it is only required to have visual or verbal communication capabilities between Camper and Counselor during Camp activities.

120.    That Code provisions allows, for example, a Camper to verbally tell their Counselor that they are leaving the bunk room to going to the bathroom, or, they are leaving the bunkroom to go to a different bunkroom to get some snack.

121.    Defendant Stoughton had admitted carrying out his "mission" to find any violation whether warranted or not because in his own words his "boss" was "up my ass."

122.    Another example for the 2017 Summer Camp was the inspection of the pool.

123.    Historically, any pool at the Camp was only inspected once a Summer. Yet, for the 2017 Camp Defendant Stoughton in his mission to find violations had others carry out his mission.

124.    Most unusually, in the 2017 Summer Camp Defendant Stoughton sent a Pool Inspector to the Plaintiff Champion property for a second time on August 15, 2017 (the second to last day of Camp).

125.    The Plaintiffs have three pools, two passed inspection and one did not because certain chlorine levels were claimed not to be met.

126.    That chlorine level result was because the pool had not been used that day.

127.    During this time, an offsite Chasidic girls group that uses the Plaintiffs' pool and retained their own lifeguards at the pool had walked in with its group.

128.    The Campers put their bags down and all girls were still fully dressed.

129.    The Plaintiffs' staff let this Chasidic girls group know that the pool could not be used so they started collecting their things to leave.

130.    At that point Plaintiff Rivka Weissmandl and a Defendant Health Inspector noticed that the girls were near the pool. The Inspector, however, had no visual observation into the actual pool area.

131.    The Inspector questioned why the girls were there and Plaintiff Rivka Weissmandl stated they were just getting their bags and pointed out as the girls exited that they were dressed and had never gone in the pool. The Inspector agreed.

132.    The Weissmandl Plaintiffs actually had a bike show in progress and told the group to stay and watch the show instead of swimming.

133.   A couple hours later the Plaintiff Champion received a violation via e-mail stating that the Campers were in the pool after it was closed.

134.   Plaintiff Rivka Weissmandl immediately called Defendant Stoughton to let him know that what was written on the violation was false.  Defendant Stoughton claimed to have taken note of what was said and advised he would discuss this with the Pool Inspector when he next came in contact with him.

135.   Nevertheless, the Plaintiff Champion was issued violations accompanied by fines despite what Defendant Stoughton stated.

136.   After the Defendant Commissioner and said Health Department Hearing on the 2017 Summer Camp alleged violation, Plaintiffs received paperwork and the fines grew from $3,000 to $4,200.  The pool violation was still listed and the fine was actually raised.

137.   As a result of these alleged 2017 Summer Camp violations, the Weissmandl Plaintiffs on March 21, 2018 appealed to the Defendant Commissioner for relief.

138.   Defendant Stoughton was first to speak at this Appeal Hearing.  At that time Defendant Stoughton did not begin his presentation regarding the violations, but rather stated that said Defendant would recommend to Defendant Commissioner that the individual Weissmandl Plaintiffs not operate a Summer Camp because of their "history."  Then Defendant Stoughton proceeded to review the violations at this Appeal Hearing.

139.   When it came time for said individual Plaintiffs to speak at this Appeal Hearing, Plaintiff Rivka Weissmandl began by defending said Weissmandl Plaintiffs' character as good people to operate a Summer Camp and their prior history of good standing with Defendant Health Department, the community and all Summer Camp Families.

21

140.    At this Appeal Hearing, however, the Weissmandl Plaintiffs were prohibited from replying to Defendant Stoughton attack on their personal and business character by being advised to only "stick to the violations" during this Appeal Hearing.

141.    In this discriminatory manner, the Defendants in their procedures did not require Defendant Stoughton to "stick to the violations", yet the Weissmandl Plaintiffs were not allowed to speak about issues raised by Defendant Stoughton concerning their good reputation which were not set forth in any violations at the Appeal Hearing.

142.    The Weissmandl Plaintiffs also attempted to contest each violation, but were required to "speed up" their presentation at the Appeal Hearing.  As a result, all violations against the Plaintiff Champion were upheld by Defendant Commissioner.

**F.  The May 18, 2018 Defendant Letter Stripping the Weissmandl Plaintiffs of Their Rights**

143.    At no time prior to May 18, 2018 were said individual Plaintiffs ever informed of any violation against them that would result in the individual Weissmandl Plaintiffs' capability to earn a livelihood and operate a Summer Camp as Directors being in jeopardy.

144.    At no time prior to May 18, 2018 was any Hearing conducted where the individual Weissmandl Plaintiffs were apprised of the potential for said Plaintiffs to be no longer allowed to serve as Directors of a Summer Camp.

145.    At no time prior to May 18, 2018 were the Weissmandl Plaintiffs given any notice of any such intention by Defendants to take away the individual Weissmandl Plaintiffs' right to earn a living as Directors of a Summer Camp or any opportunity to be heard on that issue.

146.    Defendants were fully aware that to operate a Summer Camp in 2018, appropriate paperwork had to be completed many weeks before the opening of any Summer Camp which is traditionally opened in the third or fourth week of June of each year.

147.    In fact, Defendants mailed Summer Camp renewal information to the Plaintiffs on April 6, 2018 and Plaintiffs responded by providing all information that had been previously supplied and accepted by the Defendants as proper for issuance of a Summer Camp Permit.

148.    For the 2018 Summer Camp, the Weissmandl Plaintiffs were intending to open the Summer Camp on June 26, 2018.

149.    Notwithstanding the foregoing and based upon a purported regulation so vague as to be unconstitutional as applied, on May 18, 2018 the Weissmandl Plaintiffs received a letter via e-mail approximately an hour before said Plaintiffs' Jewish Religious holiday denying the individual Plaintiffs' right to operate the 2018 Summer Camps and stating that said Plaintiffs had to find replacement Directors as said individual Plaintiffs were not considered fit to run a Summer Camp.

150.    On June 4, 2018 Plaintiff Rivka Weissmandl e-mailed Defendant Stoughton asking to reconsider this decision to forever remove the Weissmandl Plaintiffs as Camp Directors and require new Camp Directors in place to be postponed at least until next year because it was extremely difficult to find any new proper replacement Directors so close to the opening of the Summer Camp 2018 season on June 26, 2018.

151.    Defendant Stoughton summarily rejected the request and said that until that all requirements of his May 18, 2018 letter were met and all prior corporate violation fines paid, no 2018 Summer Camp Permit will be issued involving the individual Plaintiffs.

152.    Defendant Stoughton advised the Weissmandl Plaintiffs on June 4, 2018 that the requirement that said Plaintiffs be removed as Directors of any Summer Camp has "been approved by my Supervisors.  Therefore, the decision of this office stands."

153.    On June 4, 2018 the Weissmandl Plaintiffs were also advised by e-mail from Defendant Stoughton threatening said Plaintiffs that if they do not sign papers about a payment plan for a 2015 fine to a different corporation, Defendant Stoughton would not allow the Plaintiffs to open the 2018 Summer Camp.

154.    On June 13, 2018 the Weissmandl Plaintiffs in an effort to find Directors who were suitable to the Defendants so that the 2018 Summer Camp could open, provided resumes of two individuals that qualified as Directors.

155.    On June 14, 2018 Defendant Stoughton rejected one of the proposed candidates as a Director without providing adequate information regarding why that person did not qualify or could not qualify at a later time.

156.    On June 14, 2018 Defendant Stoughton also advised that the unpaid Health Department civil penalty issued to a different corporation, Merockdim, Inc. would prevent the Plaintiffs' 2018 Summer Camp from opening and that this payment issue would be submitted "to the County Department of Law next week and await a decision.  Until a decision is rendered, the camp application for a permit to operate will be put on hold."

157.    That June 14, 2018 communication from Defendant Stoughton was made while said Defendant was fully aware that the 2018 Summer Camp would be opening only within a few days on June 26, 2018 and a week delay would likely prevent the 2018 Summer Camp from opening.

24

158.    The Plaintiffs were required to undergo extraordinary and expensive efforts to attempt to accomplish the opening of the 2018 Summer Camp based upon the aforementioned conduct of the Defendants.

**G.  Continued Outrageously Arbitrary and Capricious Actions of Defendants**

159.    Plaintiffs only days from opening the Summer Camp had still not received any confirmation from Defendants that the 2018 Summer Camp would be issued a permit to operate.

160.    Instead, Defendant Stoughton increasingly began to demand information that had not been previously demanded before purportedly citing regulations that had never been applied previously.

161.    The failure of Defendants to timely advise Plaintiffs of the issuance of a permit to operate the 2018 Summer Camp severely impacted upon the good name, reputation, good will and other personal and business interests of Plaintiffs.

162.    The Defendants continued to delay responding to requests by Plaintiffs to confirm that the usual pre-operational inspection would be conducted to allow for the opening of the 2018 Summer Camp.

163.    On June 22, 2018 Plaintiffs again sought confirmation that a pre-operational inspection would be scheduled by the Defendants before the June 26, 2018 Summer Camp opening.

164.    On June 22, 2018 Defendant Stoughton at 4:30 PM advised Plaintiffs that unless a signed Stipulation was provided to pay for the civil penalties of a prior corporation, the Plaintiffs' Summer Camp would not open.  Days away from opening Plaintiffs' Summer Camp,

Defendants would still not schedule a pre-operational inspection to allow the 2018 Summer Camp to open on June 26, 2018.

165.    Plaintiffs had to rush to said Defendant's Office by 5:00 PM on June 22, 2018 to sign the requested Stipulation and pay the money demanded to schedule the pre-operational inspection for the 2018 Summer Camp to open.

166.    On June 25, 2018 a pre-operational inspection was conducted by Defendant Health Department employees who proceeded to review the property in a manner that was completely contrary from prior inspection procedures, thus evidencing a plan to find problems and continue to improperly and selectively apply applicable laws, rules and regulations to cause harm to Plaintiffs.

167.    Eventually, on June 26, 2018 Plaintiffs were allowed to open the 2018 Summer Camp, but not provided with the actual permit to do so.

168.    The aforementioned conduct of Defendants does not advance any legitimate local interest and in a discriminatory manner is applied so as to regulate and substantially impact upon the interstate commerce activities of the Plaintiffs.

169.    Moreover, the activities of Defendants have abrogated the rights of the Weissmandl Plaintiffs to work and receive income without any legitimate basis for Defendants to so act since Defendants' enforcement of provisions of laws has been applied and continues to be applied in an arbitrary and discriminatory manner against the Plaintiffs.

170.    The foregoing actions of the Defendants were done in bad faith for an improper and illicit motive and in gross disregard for Plaintiffs' constitutional rights.

171.   As a result of the discriminatory, selective and disparate treatment that has occurred and the Plaintiffs believe will continue, Plaintiffs' statutory and constitutional rights have been violated.

172.   The Defendants have applied and/or enforced the laws, regulations and ordinances in a discriminatory fashion against the Plaintiffs and said conduct continues to date.

173.   At all times relevant herein, Defendants acted under color of state law.

174.   In taking all actions alleged in this Complaint, Defendants acted intentionally maliciously, gross negligently and with deliberate indifference to the Plaintiff's civil rights and pursuant to a formally and/or informally adopted policy.

175.   The actions of the Defendants and their practices and policies continued to subject Plaintiffs to selective inspections, enforcement and purported violations even after opening the 2018 Summer Camp and continuing to the date of this Complaint.

**CLAIMS FOR RELIEF**

**AS AND FOR A FIRST CLAIM FOR RELIEF**

175.   The Plaintiffs repeat and reallege each and every paragraph as though set forth in full herein.

176.   The Plaintiffs have a constitutionally protected right under the First and Fourteenth Amendments to the United States Constitution to freely practice their religion and to provide a place for the campers to freely and jointly practice their religion as well.

177.   Defendants have acted under color of state law to deprive Plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.

178.    Defendants' actions were taken and motivated by Defendants' goal, policy, and practice to suppress and limit the growth and religious practices of the Religious Community, inclusive of the Plaintiffs and their campers.

179.    The foregoing constitutes clearly established statutory or constitutional rights of which a reasonable person, and the Defendants, would have known.

180.    As a direct and proximate result of Defendants' conduct, the Plaintiffs have suffered a distinct and actual injury to their civil rights.

181.    As a result of Defendants' actions, Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

182.    As a direct and proximate result of the above-referenced actions, the Plaintiffs' First Amendment rights have been violated by Defendants and said Plaintiffs have suffered and will continue to suffer substantial losses.  The amount of such damages shall be determined at trial, but in no event less than $25,000,000.

## AS AND FOR A SECOND CLAIM FOR RELIEF

183.    The Plaintiffs repeat and reallege each and every paragraph as though set forth in full herein.

184.    The Fifth and Fourteenth Amendments of the United States Constitution guarantee all persons, including the Plaintiffs, due process of law.

185.    The Plaintiffs have constitutionally protected liberty and property rights in the ownership, occupation, and use of the their Summer Camp business to earn a living and all rights attendant thereto, including but not limited to the right to use, enjoy, and their liberty and

28

property rights to operate their said business in accordance with the laws and as well as the right to have their applications for permits from the Defendants to be processed, considered and decided in accordance with the law.

186.    Defendants impaired, destroyed, infringed upon and/or interfered with the Plaintiffs' liberty and property rights in an outrageously arbitrary and capricious manner for improper and malicious purposes with the intent to injure said Plaintiffs.

187.    The Defendants abused that process to deprive the Plaintiffs of lawful use and enjoyment of their said liberty and property rights out of impermissible religious and political animus.

188.    Defendants deliberately and improperly interfered with the process by which, and the laws pursuant to which individuals are allowed to be Camp Directors, the issuing of permits and approvals, in order to block or delay the issuance of the Permit sought by the Plaintiffs for reasons unrelated to the merits of the applications, and engaged in a campaign of harassment and delay designed to deny or damage said Plaintiffs their property, liberty and rights and/or to force the Plaintiffs to abandon their Summer Camp business.

189.    By reason of the foregoing, Defendants have violated and continue to violate the rights of the Plaintiffs under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

190.    As a direct and proximate result of Defendants' conduct, the Plaintiffs have suffered a distinct and actual injury to their civil rights.

191.    As a direct and proximate result of the above-referenced actions, the Plaintiffs' Fifth and Fourteenth Amendment rights to Due Process have been violated by Defendants and

said Plaintiffs have suffered and will continue to suffer substantial losses. The amount of such damages shall be determined at trial, but in no event less than $25,000,000.

**THIRD CLAIM FOR RELIEF**

192.    The Plaintiffs repeat and reallege each and every paragraph as though set forth in full herein.

193.    Defendants selectively treated the Plaintiffs as compared with others similarly situated.

194.    Defendants' actions as aforesaid were not rationally related to a legitimate governmental interest.

195.    Defendants' actions in treating the Plaintiffs differently from those similarly situated were invidious and wholly arbitrary.

196.    Defendants singled out the Plaintiffs with malevolent or bad faith intent to injure said Plaintiffs and/or to inhibit or punish Plaintiffs' exercise of their constitutional property rights and/or rights of freedom of association.

197.    No rational person could regard the circumstances of the Plaintiffs to differ from those of the others similarly situated as aforesaid to justify the differential treatment on the basis of a legitimate government policy, and the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that Defendants acted on the basis of a mistake.

198.    Defendants, by their acts, have abridged and violated the rights of the Plaintiffs to Equal Protection in breach of 42 U.S.C. § 1983 and in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

199.    As a direct and proximate result of the above-referenced actions, the Plaintiffs' rights to Equal Protection and other rights have been violated and the Plaintiffs have suffered and will continue to suffer substantial losses.  The amount of such losses shall be determined at trial, but in no event less than $25,000,000.00.

## FOURTH CLAIM FOR RELIEF

200.    The Plaintiffs repeat and reallege each and every paragraph as though set forth in full herein.

201.    The New York State Sanitary Code provisions regarding the requirements to operate a Summer Camp are as applied by Defendants is so vague as to be unconstitutional and is void.

202.    The said Code provisions contain terms that when applied are so unclear that a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited, so that he or she may act accordingly.

203.    The said Code provisions lack explicit standards for those who apply them and allow Plaintiffs to be subject to arbitrary or discriminatory enforcement.

204.    The said Code provisions are impermissibly vague since they abut upon sensitive areas of basic constitutional rights in such a way as to operate when applied by Defendants to inhibit the exercise of those rights of Plaintiffs.

205.    The said Code provisions as applied by Defendants violate the Plaintiffs' rights to Due Process, as in all of their possible applications to said Plaintiffs, lack any legitimate reason and are arbitrary, capricious, and not rationally related to any legitimate government interest.

206.    The said Code provisions when applied by Defendants were arbitrary, capricious, unreasonable, malicious, improperly motivated, and conscience shocking, sought to deprive the Plaintiffs of the use of their First Amendment religious rights as well as their liberty and property rights in their Summer Camp business.

207.    Additionally, whereas others similarly situated are not subject to the requirements and restrictions in the said Code provisions, and the Defendants irrationally distinguished between similarly situated classes.

208.    The said Code provisions were arbitrarily applied restrictions applicable only to the Plaintiffs and designed only to thwart said Plaintiffs' business plans without any relation to any legitimate governmental interest.

209.    Defendants knew of the Plaintiffs' plans to operate their Summer Camps while exercising religious freedoms in support of that growth of the Religious Communities, and Defendants' application of said Code provisions was intentional to prohibit the use planned by said Plaintiffs.

210.    By reason of the foregoing, the said Code provisions should be declared void for vagueness, void for having violated the Plaintiffs' Due Process Rights, and void for having violated said Plaintiffs' Rights to Equal Protection.

211.    As a direct and proximate result of the above-referenced actions in applying the said Code provisions, the Plaintiffs' Fourteenth Amendment rights to Due Process and Equal Protection have been violated by Defendants and said Plaintiffs have suffered and will continue to suffer actual damages and substantial losses.    The amount of such damages shall be determined at trial, but in no event less than $25,000,000.

## FIFTH CLAIM FOR RELIEF

212.    The Plaintiffs repeat and reallege each and every paragraph as though set forth in full herein.

213.    By reason of the expenditures and other efforts by the Plaintiffs concerning the operation of their Summer Camps, the right of said Plaintiffs to so lawfully operate the 2018 Summer Camp pursuant to the laws, rules, and regulations in effect has so vested.

214.    Defendants acted in bad faith and unduly delayed acting upon the Plaintiffs' application as aforesaid for the purpose of preventing said Plaintiffs from lawfully opening their 2018 Summer Camp.

215.    Defendants delayed rendering determinations as to the Plaintiffs' expected Summer 2018 Camp Permit as aforesaid and such delay was the product of malice, bad faith, oppression or manipulation as well as being outrageously arbitrary and capricious.

216.    By reason of the foregoing, this Court should declare that the Plaintiffs be allowed to operate and continue to operate their 2018 Summer Camp and recovery all monetary damages sustained.

## SIXTH CLAIM FOR RELIEF

217.    The Plaintiffs repeat and reallege each and every paragraph as thought set forth in full herein.

218.    At all relevant times herein, Defendants developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of such rights.

219.    Defendants unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

220.    The constitutional abuses and violations by Defendants were proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendants with a goal of limiting and suppressing the growth of the Religious Community in Rockland County, including the growth of Plaintiffs' aforesaid business.

221.    The Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

222.    Defendants have acted with deliberate indifference to the constitutional rights of Plaintiffs.

223.    As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiffs' constitutional rights have been violated by Defendants and said Plaintiffs have suffered and will continue to suffer substantial losses.   The amount of such damages shall be determined at trial, but in no event less than $25,000,000.

## SEVENTH CLAIM FOR RELIEF

224.    The Plaintiffs repeat and reallege each and every paragraph as though set forth in full.

225.    The actions of Defendants violate the Plaintiffs' rights under New York State Executive Law § 296.

226.    By reason of the foregoing, the actions of Defendants should be declared illegal and an award of appropriate damages provided to the Plaintiffs.

227.    No other application has been made for the relief accept as requested herein.

## **RELIEF SOUGHT**

**WHEREFORE**, the Plaintiffs demand Judgment against all Defendants as follows:

(1)    As to the First Claim for Relief:

a.    Compensatory damages against Defendants in an amount to be determined at trial, but in no event less than $25,000,000;

b.    Awarding Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

(2)    As to the Second Claim for Relief:

a.    Preliminarily and permanently enjoining Defendants and all others acting in concert with them from undertaking any and all action in furtherance of the selective enforcement and any other individual or official act in furtherance of these illegal acts;

c.    Compensatory damages against Defendants in an amount not less than $25,000,000;

d.    Awarding the Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

(3)    As to the Third Claim of Relief:

a.    Declaring that the said Code provisions as applied are unconstitutionally vague and violate the Plaintiffs Due Process and Equal Protection Rights on their face and are void pursuant to the Fifth and Fourteenth Amendments to the United States Constitution;

       b.      Preliminarily and permanently enjoining Defendants and all others acting in concert with them from enforcing the provisions of the said Code provisions;

       c.      Awarding compensatory damages against Defendants in an amount not less than $25,000,000;

       d.      Awarding the Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

(4)    As to the Fourth Claim for Relief:

       a.      Declaring that Plaintiffs' rights have been violated pursuant to applicable law;

       b.      Awarding  Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

       c.      Awarding Plaintiffs damages against the individual Defendants in an amount to be determined by this Court;

(5)    As to the Fifth Claim for Relief:

       a.      Declaring that Plaintiffs' rights to operate their Camp has vested;

       b.      Declaring that any review of the Plaintiffs' 2018 Summer Camps shall be pursuant to the applicable law;

       c.      Awarding the Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

(6)    As to the Sixth Claim for Relief:

       a.      Declaring that Plaintiffs' rights have been violated pursuant to applicable law;

      b.      Awarding the Plaintiffs their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

      c.      Awarding Plaintiffs damages against the individual Defendants in an amount to be determined by this Court;

(7)     As to the Seventh Claim for Relief:

      a.      Declaring that Plaintiffs' rights have been violated pursuant to applicable provisions of the New York State Executive Law;

      b.      Awarding the Plaintiffs monetary damages, their costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action;

     Granting such other, further and different relief as to this Court seems just, proper and equitable.  The Plaintiffs demand a Trial by Jury on all issues entitled to be tried by a Jury.

Dated: July 26, 2018
      South Nyack, New York

                  *Yours, etc.*

                  FEERICK LYNCH MacCARTNEY
                    & NUGENT, PLLC

                  By: _____
                  Dennis E. A. Lynch
                  *Attorney for Plaintiffs*
                  96 South Broadway
                  South Nyack, New York 10960
                  (845) 353-2000